# FOR PUBLICATION



**FILED & ENTERED**

**JAN 10 2017**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** cargill     **DEPUTY CLERK**

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>MICHAEL SEVILLA SANTOS &<br>MARICAR DOMINGO SANTOS,<br><br><br>                    Debtors. | Case No.: 6:13-bk-13557-MH<br><br>Chapter 7<br><br>**MEMORANDUM DECISION AND ORDER DENYING MOTION TO CONVERT TO CHAPTER 13**<br><br>Hearing:<br>Date:        December 20, 2016<br>Time:       11:00 a.m.<br>Courtroom:  303 |

### I.      PROCEDURAL BACKGROUND

On February 28, 2013, Michael & Maricar Santos ("Debtors") filed a Chapter 7 voluntary petition. On June 17, 2013, Debtors received a standard discharge. The Chapter 7 case, however, remained open. The Trustee's Final Report was approved on December 11, 2013, and his Order of Distribution was approved on December 19, 2013.

On November 20, 2015, the Court granted the Trustee's application to employ the law offices of Wesley Avery ("Avery") as general bankruptcy counsel. On December 30, 2015, the Court granted the application to employ Neiman Realty as real estate broker. On April 14, 2016, over the Debtors' objection, the Court granted the Trustee's motion for turnover relating to real property located at 5689 Andover Way, Chino Hill, CA 91709 ("Chino Hills property"). The

court issued findings of fact and conclusions of law supporting its order granting the motion (Docket No. 57). Debtors appealed the turnover over to the Bankruptcy Appellate Panel, but their appeal was dismissed on June 14, 2016. Trustee filed another motion for turnover on September 27, 2016; the order granting the motion was entered on November 3, 2016.

On October 4, 2016, Debtors filed a motion to convert their case from Chapter 7 to 13. A hearing on the manner was held on November 9, 2016. The hearing was continued to allow for additional briefing on the issue whether, and in what circumstances, a Chapter 7 case could be converted to a Chapter 13 post-discharge. At the December 7, 2016 continued hearing, the matter was continued to allow for a reply by Debtors. Debtors filed their reply on December 14, 2016.

## II.    EVIDENTIARY OBJECTIONS

On December 14, 2016, Trustee filed an evidentiary objection to certain content that was included in Debtors' reply of the same day. Specifically, Trustee objected to footnote 1 and exhibit B of Debtors' reply as: (1) outside the scope of reply; (2) evidence of settlement negotiations; (3) irrelevant; (4) in violation of Local Bankruptcy Rule 9013-1(c)(3)(A); (5) inadmissible hearsay; and (6) lacking authentication. The Court will sustain Trustee's evidentiary objections in their entirety, because the objected to matter is outside the permitted scope of the reply and is irrelevant to this motion.

## III.    FACTUAL BACKGROUND

On Debtors' voluntary petition, the Chino Hills property is identified as having a value of $360,000. Debtors claimed a $100,000 exemption in the Chino Hills property and identified two secured claims against the property, one in the amount of $254,110.03, and the other in the amount of $38,611.15. After the Court approved the Trustee's Final Report on December 19, 2013, Trustee determined that the Chino Hills property had not been abandoned, that it remained property of the estate, and had increased in value to $500,000. Trustee determined that the equity in the Chino Hills property was sufficient to justify administration.

On September 27, 2016, Trustee filed his second motion for turnover, noting that Debtors had, up to that point, failed to comply with the Court's original order dated April 14, 2016. Faced with Trustee's second motion for turnover, and settlement discussions having fallen through, in an effort to shield their real property from Trustee's sale efforts, Debtors filed their motion seeking to convert to Chapter 13.

## IV. DISCUSSION

### A.  Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. § 1409(a).

### B.  Conversion from Chapter 7 to Chapter 13 Post-Discharge

The preliminary question before the Court is whether, and under what circumstances, a Debtor can convert their Chapter 7 case to a Chapter 13 post-discharge. No binding law has been identified with respect to this issue. It appears, however, that historically the majority of courts have not afforded a debtor the absolute right to convert a case to Chapter 13 after a discharge has been obtained. *See, e.g.*, *In re Starling*, 359 B.R. 901, 907-09 (Bankr. N.D. Ill. 2007) (conversion only authorized after vacation of discharge); *In re Hauswirth*, 242 B.R. 95, 96 (Bankr. N.D. Ga. 1999) ("The other courts which have considered that question have all reached the tacit conclusion that a debtor may not convert from Chapter 7 to Chapter 13 and retain the Chapter 7 discharge."); *In re Lesniak*, 208 B.R. 902, 907 (Bankr. N.D. Ill. 1997) (no conversion allowed after discharge).

The applicable statute, 11 U.S.C. § 706(a) (2005), states:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

Prior to 2007, some courts had interpreted § 706(a) as affording a debtor an absolute, one-time right to conversion. *See, e.g.*, *In re Gibbons*, 280 B.R. 833, 834 (Bankr. N.D. Ohio 2002) ("The majority view, espoused by the Debtors, holds that the section should be read literally to allow each eligible debtor one absolute right to convert upon request so long as the case has not been converted before.") (collecting cases); *In re Widdicombe*, 269 B.R. 803, 806-07 (Bankr. W.D. Ark. 2001) ("The majority view is that denying conversion from chapter 7 to chapter 13 is against the clear wording of the statute. Courts following this view have held that a debtor who has not previously converted has an absolute right to convert under § 706(a).") (collecting cases).

In 2007, the Supreme Court decided *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007). *Marrama* noted two exceptions to a debtor's right to conversion:

> There are at least two possible reasons why Marrama may not qualify as such a debtor, one arising under § 109(e) of the Code, and the other turning on the construction of the word "cause" in § 1307(c). The former provision imposes a limit on the amount of indebtedness that an individual may have in order to qualify for Chapter 13 relief. More pertinently, the latter provision, § 1307(c), provides that a Chapter 13 proceeding may be either dismissed or converted to a Chapter 7 proceeding "for cause" and includes a nonexclusive list of 10 causes justifying that relief. . . . In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of the class of "honest but unfortunate debtor[s]" that the bankruptcy laws were enacted to protect. The text of § 706(d) therefore provides adequate authority for the denial of his motion to convert.

*Id.* at 373-74 (citation omitted). *Marrama* explicitly identified two provisions, §§ 109(e) and 1307(c), which determine whether a debtor qualifies to convert from Chapter 7 to Chapter 13. Violation of either provision results in a finding that the debtor is ineligible to be a debtor under Chapter 13, and, therefore, is ineligible for conversion to Chapter 13.

>The first provision, 11 U.S.C. § 109(e) (2010), states:
>
>(e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $394,725 and noncontingent, liquidated, secured debts of less than $1,184,200, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $394,725 and noncontingent, liquidated, secured debts of less than $1,184,200 may be a debtor under chapter 13 of this title.

The issue with § 109(e) is whether it requires that a debtor owe any debt. Because a debtor's personal liability is extinguished by a Chapter 7 discharge, it is possible that there would not be any claims that would be subject to a Chapter 13 reorganization plan. "Because the creditors that had their claims discharged in the Chapter 7 no longer have any right to receive payment under a Chapter 13 plan or the right to objection to confirmation, the debtor 'no longer has any meaningful debts to repay pursuant to a Chapter 13 plan.'" *In re Starling*, 359 B.R. at 911 (*quoting In re Marcakis*, 254 B.R. 77, 82 (Bankr. E.D.N.Y. 2000)). While *Starling* questions whether an individual qualifies to be a debtor under Chapter 13 if they have no "meaningful debts to repay," § 109(e) is not dispositive here. 11 U.S.C. § 348(d) provides that post-petition, pre-conversion debts are to be included in a converted case and, therefore, a debtor may incur new debts that could potentially be addressed in the converted case. It is unclear whether Debtors, in this case, have incurred new debts since the filing of the petition. Nevertheless, the Court need not determine whether an individual with no meaningful debts is ineligible to be a Chapter 13 debtor, because the matter can be resolved through an interpretation of *Marrama's* second eligibility provision, § 1307(c).

>Debtors contend that *Marrama* provides a "very narrow" exception to their "absolute" right of conversion. While *Marrama* is noted for establishing the bad faith exception to conversion, it is important to note that *Marrama's* holding was that conversion could be denied when grounds existed to "re-convert" or dismiss the case under 11 U.S.C. §1307(c) (2010). *See Marrama*, 549 U.S. at 375 ("On the contrary, the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process' described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors."). Therefore, *Marrama* concluded that an individual whose potential Chapter 13 case was subject to dismissal or conversion under § 1307(c) was not entitled to a right to convert. *See id*. at 373-74.

>11 U.S.C. § 1307(c) (2010) provides:
>
>(c) Except as provided in subsection (f) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including . . .

Because § 1307(c) provides for conversion or dismissal "for cause", it follows that the Court has the authority to deny conversion "for cause."

"For cause" is an expansive standard and many different findings could lead to a dismissal for cause. *See, e.g.*, *Marrama*, 549 U.S. 365 (abuse of process); *In re Molitor*, 76 F.3d 218 (8th Cir. 1996) ("unfair manipulation of Code"); *Matter of Love*, 957 F.2d 1350, 1357 (7th Cir. 1992) (fairness to creditors). "A judge should ask whether the debtor 'misrepresented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner.'" *In re Eisen*, 14 F.3d 469, 470 (9th Cir. 1994) (*quoting In re Goeb*, 675 F.2d 1386, 1390 (9th Cir. 1982); *see also In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999) (listing factors that should be considered).

In considering whether there are grounds for conversion "for cause," (such as manipulation of Bankruptcy Code or abuse of process), the Court notes that two similar, and allowed, tactics have a fundamentally different impact on administration of the bankruptcy estate. Those situations are when a debtor files sequential bankruptcies (i.e. the filing of a Chapter 13 upon the closing of the Chapter 7 case), and when the Debtor attempts to file simultaneous bankruptcies (the filing of a Chapter 13 case while a Chapter 7 case is pending). The former is permissible and is commonly referred to as a Chapter 20 case. *See, e.g.*, *In re Metz*, 67 B.R. 462, 465 (B.A.P. 9th Cir. 1986). The latter appears to be permissible in the Ninth Circuit upon a finding that the later filing occurred in good faith. *See In re Blendheim*, 803 F.3d 477, 500 (9th Cir. 2015).

The key distinction between those approaches, and the approach proposed here, is the effect the filing will have on the administration of the bankruptcy estate. In a Chapter 20, the Chapter 7 estate is fully administered prior to the filing of a Chapter 13 petition. Both the originally filed Chapter 7, and the later filed Chapter 13, are administered fully in accordance with the Code. Since the Code does not impose a waiting period for re-filing bankruptcy, there typically is no legal or equitable impediment to the maintenance of a Chapter 20 bankruptcy.

*Blendheim*, the primary case relied upon by Debtors in their reply, is also distinguishable from the instant situation. In *Blendheim*, the question was whether the Debtors could simultaneously maintain Chapter 7 and Chapter 13 proceedings. *Blendheim*, noting a circuit split on the issue, determined that there was no absolute prohibition on maintaining simultaneous bankruptcy cases; instead, *Blendheim* adopted a good-faith requirement. 803 F.3d at 500 ("We also agree with the Eleventh Circuit that the fact-sensitive good faith inquiry, in which courts may examine an individual debtor's purpose in filing for Chapter 13 relief and take into account the unique circumstances of each case, is a better tool for sorting out which cases may proceed than the blunt instrument of a flat prohibition.").

Likewise, there is no absolute prohibition on converting a case from Chapter 7 to Chapter 13 post-discharge, but pre-closing; rather there is a § 1307(c) "for cause" review. In this case, as opposed to *Blendheim*, allowing Debtors' proposed conversion would relieve Debtors of burdens (allowing the bankruptcy estate to be fully administered) tied to benefits (the bankruptcy discharge) that they have already received. To extend the Chapter 20 practice and the *Blendheim* holding to allow for conversion in this situation would be to create a loophole that could lead to abuse of the bankruptcy system. *See, e.g.*, *In re Lesniak*, 208 B.R. 902, 906 (Bankr. N.D. Ill. 1997) ("[T]he Court finds that it would be an abuse of process to permit the Debtors to convert to Chapter 13 at this stage of their Chapter 7 case."). If "a debtor converts to Chapter 13 after the Chapter 7 discharge, but before the estate property is liquidated, he has received all of the benefits of Chapter 7 without any of the burdens, because he regains his nonexempt property,

and his debts have all been discharged." *In re Rigales*, 290 B.R. 401, 407 (Bankr. N.M. 2003). Bankruptcy relief involves a "quid pro quo." *See In re Jeffrey*, 176 B.R. 4, 6 (Bankr. D. Mass. 1994).

While *Blendheim* did not discuss what administrative consequences its holding caused[1], assuming that the maintenance of simultaneous bankruptcy cases allows for full administration of both cases, *Blendheim* does not violate the bankruptcy *quid pro quo*. Rather than precluding the trustee's administration of the bankruptcy estate, the maintenance of simultaneous bankruptcies appears to result in an additional trustee administering separate assets. Continuing administration of both cases would not necessarily be unfair to creditors, or result in a manipulation or abuse of the Bankruptcy Code. Here, however, Debtors are proposing to cease administration of their Chapter 7 case after receiving a discharge. Therefore, the case is fundamentally different because the Chapter 7 case is not fully administered, and, therefore, there is no benefit to the estate in exchange for the Debtors' discharge.[2]

While Debtors have repeatedly argued that there has been no bad faith conduct in this case, obtaining a discharge and then prohibiting the Trustee from administering the case is unfair to creditors, and is a manipulation and abuse of the Bankruptcy Code. Therefore, cause would exist to convert the case under § 1307(c). Cause does not require "fraudulent intent" or any bad conduct by Debtors. *Leavitt*, 171 F.3d at 1224. It is unclear what circumstances would permit conversion of a Chapter 7 case to a Chapter 13 prior to case closing, but the Court need not address that question because those circumstances have not been presented by Debtors here. *See David Guess, Exposing the Convert's Loophole: Postdischarge Conversion as an Abuse of the Bankruptcy Process*, 2005 ANN. SURV. OF BANKR. LAW 19 (2005) (strongly questioning whether there is a good faith reason to convert to Chapter 13 post-discharge).

The Court agrees with the reasoning presented by the *Starling* and *Lesniak* courts and finds that cause would exist to convert or dismiss a Chapter 13 case that was converted to Chapter 13 post-discharge, prior to closing, when administration of the Chapter 7 estate was still occurring. Specifically, Debtors' proposed conversion, as noted by *Starling* and *Lesniak*, would result in an abuse of process. Because *Marrama* allows the Court to deny conversion "for cause" under § 1307(c), the Debtors are ineligible to be debtors under Chapter 13 at this time.

### C. Post Discharge Waiver (or Revocation) of Discharge

---

[1] Case law would suggest that the original bankruptcy estate would remain intact, and that the second filing would comprise new debts and assets. *See, e.g. In re Heath*, 2007 WL 7532278 (B.A.P. 9th Cir. 2007). In *In re Heath*, ten months after the debtors obtained a discharge, the trustee informed the debtors he intended to sell their residence. Three months later the debtors commenced a Chapter 13 case, while their Chapter 7 proceeding was still open. The Court remarked: "The Property remained an asset of the chapter 7 estate when Appellants filed their Chapter 13 petition." *Id*. at *4. This is so because the bankruptcy estate consists of a debtor's legal and equitable interests. *See* 11 U.S.C. § 541(a)(1). While those interests are still held by the previous bankruptcy estate they are not technically interests of the debtor, and, therefore, would not become interests of the second estate upon the commencement of the second case. *See also id*. at n. 9 (discussing single estate rule and collecting cases).

[2] The Court notes that Debtors are aware of *Blendheim* and if Debtors believe that this case and the *Blendheim* case are analytically the same, which they argue, Debtors could employ the tactic utilized in *Blendheim* to file a simultaneous Chapter 13 case. The fact Debtors have not done so is an indication that the motive for conversion is to preclude Chapter 7 administration (which would still occur if the *Blendheim* approach were utilized), rather than a good-faith attempt to reorganize in a Chapter 13 proceeding.

Additionally, Debtors stated that they are willing to waive their discharge as a condition of conversion. 11 U.S.C. § 727(a)(10) (2005) states:

(a) The court shall grant the debtor a discharge, unless –

(10) the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter.

Here, Debtors have not provided a written waiver of discharge for the Court's approval. Even if Debtors had presented a written waiver of discharge, the statutory language " . . . shall grant the debtor a discharge, unless . . . " makes clear that the waiver must occur prior to the granting of the discharge. *See In re Aubry*, 2015 WL 5735204 at *1 (Bankr. C.D. Cal. 2015) ("Having considered Debtor's so-called 'Waiver,' the court now rules and disapproves the so-called 'Waiver,' holding that it is legally ineffective since it is untimely under 11 U.S.C. § 727(a)(10), having been made after the bankruptcy discharge has been entered.); *see also In re Bailey*, 220 B.R. 706, 710 (Bankr. M.D. Ga. 1998). The cases cited by Debtors in support of a post-discharge waiver of discharge do not support the contention that a discharge can be waived after it is granted; none of the cases deal with § 727(a)(10) or waiver of a discharge, but, instead, deal with other provisions and procedural mechanisms that Debtors have not utilized.

## V. CONCLUSION

*Marrama* allows a court to deny conversion from Chapter 7 to Chapter 13 "for cause". Because the bankruptcy process constitutes a *quid pro quo*, obtaining benefits for the fulfillment of responsibilities, Debtors' attempt to retain the benefits of the bankruptcy process, without fulfilling their corresponding duties, constitutes an unfair manipulation of the Bankruptcy Code. While there may be circumstances in which post-discharge conversion should be allowed, Debtors have not provided a factual basis sufficient to overcome the conclusion that it would constitute an abuse of process to allow Debtors to retain their discharge, but preclude full administration of the Chapter 7 bankruptcy estate by the Trustee. Moreover, Debtors have not requested to vacate or revoke the discharge, and thus the Court does not address such issue. For those reasons, and as set forth above, Debtors' motion is DENIED.

###

Date: January 10, 2017

Mark Houle
United States Bankruptcy Judge